GEORGE DARBY, The (UNITED STATES v.). See Case No. 15,200.

## Case No. 5,332.

### The GEORGE FARRELL.

[4 Ben. 316.] [1]

District Court, S. D. New York. Oct., 1870.

#### Tow-Boat and Tow.

1. A tow-boat took several vessels in tow to tow them through Hell Gate from New York. The tide was flood, and the weather fair. After passing through the Gate, one of the vessels struck some obstruction under water, causing her to leak, and making it necessary to run her ashore. Her owner filed a libel against the tug, claiming that the tug had taken in tow more vessels than she could manage, and that the vessel was allowed to be carried by the tide out of the channel, and to strike a rock on the shore. The tug claimed, on the other hand, that the vessel struck a sunken wreck in the channel: *Held*, that, on the evidence, the tug had taken in tow more vessels than she had power to manage.

2. The burden was upon her to prove that the object which the vessel struck was one, the presence of which the tug was not bound to have known. She had failed to show this, and was, therefore, liable for the damages.

In admiralty.

Beebe, Donohue & Cooke, for libellant.
R. D. Benedict, for claimant.

BLATCHFORD, District Judge. This is a libel filed by the owner of the schooner Niger against the steam-tug George Farrell, to recover for the damages sustained by the schooner and her cargo, while she was being towed through Hell Gate by the tug, on the morning of the 6th of August, 1869. The schooner was bound from New York to Weymouth, Massachusetts. The weather was fine, and the tide was flood. The tug had two schooners lashed alongside of her on her port side, and two on her starboard side. The Niger and another schooner called the Delaware were towed astern, a hawser from the tug running to each of them, the Niger being on the port side of the Delaware. The tug, with the six schooners, proceeded up the East river, and between Blackwell's Island and the Long Island shore, and, at or near Astoria, the tug took in tow, in addition, a sloop, which was placed on the starboard side of the Delaware, at the end of a third hawser running from the tug. The Niger, the Delaware, and the sloop were properly secured to each other. In this manner the tug and the seven vessels proceeded in safety until the Niger had reached a place nearly off the point of the sunken meadow, opposite the middle ground, and to the eastward of Ward's Island, when the Niger, in consequence of her having struck some object under water on her port side, was found to be making water fast, and to be sinking. She was cut loose and run

---

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

ashore, where she sank. The libel charges that the accident was due to the fault of the tug in taking in tow more vessels than she could manage. The answer avers, that, by the fault of those in charge of the Niger, or of those in charge of the sloop that was in tow, or of both of them, and not by the fault of the tug, the Niger and the sloop were allowed to sheer beyond the line of the direction of the tug; that thereby the Niger ran upon a rock or a sunken wreck or some obstruction, which was not, and could not be, known to the tug; that those in charge of the tug hailed the said vessels to sheer in and follow the course of the tug, but they failed to do so; and that the injury to the Niger was caused by negligence on the part of the said two vessels, or of one of them.

Without discussing the evidence, which is voluminous, I am satisfied that the weight of it is decidedly in favor of the conclusion that the accident happened through the fault of the tug, and not through any fault on the part of the Niger. The tug undertook to tow more vessels than she could properly manage, with the tide as it was, and with three of the vessels towed at the ends of hawsers. She lacked the power to give the vessels astern such way through the water, running, as they were, with a strong flood tide, that their helms, properly managed, could keep them from being drifted and set by the tide upon the shore where the Niger struck. The evidence is very clear, that the helms of all three vessels astern were put and kept aport, as the tide set them upon the shore on their port side, and that, notwithstanding this, the tug failed to draw them clear of that shore. What the witnesses on board of the tug call the sheering of the vessels astern, was their drifting with the set of the tide. The tug having, on this state of facts, and through negligence, suffered the Niger to strike, the burden of proof is on the tug to show that the Niger struck on some object, the presence of which ought not to have been known to the tug. The tug fails to show this. Indeed, the weight of the evidence is, that the Niger went so near to the shore as to strike a rock.

There must be a decree for the libellant, with costs, with a reference to a commissioner to ascertain the damages sustained by the libellant.